

**FILED** PK

6/10/2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| JASON SHORE and COINABUL, LLC, individually and on behalf of all others similarly situated, | Case No.: 16-cv-04363 |
|  | **DOCUMENT FILED UNDER SEAL** |
| Plaintiffs, | Hon. John W. Darrah |
| v. | Magistrate Judge Susan E. Cox |
| JOHNSON & BELL, LTD, an Illinois corporation, |  |
| Defendant. |  |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNSEAL CASE

Plaintiffs Jason Shore's and Coinabul, LLC's ("Plaintiffs") Motion to Unseal Case (the "Motion") could not be more straightforward: (i) Plaintiffs brought this matter under seal to protect members of the putative class from harm; (ii) the potential source of that harm—three security vulnerabilities affecting Defendant Johnson & Bell, Ltd.'s ("Defendant" or "Johnson & Bell") information technology infrastructure—has been remedied and, thus, no longer poses a threat to the class; and (iii) because there is no basis to keep this matter under seal, the public's fundamental right to access judicial records and proceedings compels the unsealing of the case file.

Defendant's Response does not address the Motion or the simple (and incontrovertible) rationale supporting it in any way. Instead, and in clear anticipation of this matter becoming public, Defendant offers a weak straw man argument (which, while non-responsive, is easily refuted) and otherwise uses the Response as vehicle to—under the cover of the litigation privilege—make arguments to the press. This "get the story out there" strategy started two weeks ago, when Defendant filed a barbed Rule 12 Motion to Dismiss *after* receiving notice that

Plaintiffs' had voluntarily dismissed their claims under Rule 41.[1] (Declaration of Ben Thomassen ("Thomassen Decl."), attached as Exhibit 1, at ¶ 3.) And it continues with the Response, where, *inter alia*, Defendant now launches direct attacks against Plaintiffs' retained law firm (Edelson PC) and Plaintiffs' specific counsel (Jay Edelson).

In short, Defendant's Response is a self-serving distraction that has no relevance to the simple issue presented by the Motion. But because Defendant has chosen to drag this case and Plaintiffs' counsel through the mud, Plaintiff provides the background necessary to frame and understand Defendant's current litigation (and public relations) strategy before addressing its nonsensical legal argument. For the reasons discussed below, the Motion should be granted and the case unsealed.

## I.    BACKGROUND

### A.    Plaintiffs Voluntarily Dismissed and Selected Private Arbitration For the Purposes of Efficiency (i.e., in Light of Johnson & Bell's Misguided Approach to Litigating this Case).

Defendant is correct about one thing: Plaintiffs filed their Rule 41 notice of voluntary dismissal because they now intend to pursue these (and other) claims in arbitration. But the rationale underlying Plaintiffs' *unilateral* decision[2] isn't a desire for confidentiality, as Defendant suggests. (*See* Resp. at 4 ("Plaintiffs and Johnson & Bell opted for privacy and that is

---

[1]    Given that Johnson & Bell knew there would be no response to its meaningless, after-the-fact Rule 12 Motion, it was able to take significant liberties that it otherwise couldn't have if the case were still being actively litigated. Among many examples, its Motion omits *any* reference to the Supreme Court's recent *Spokeo* decision, which confirms "that intangible injuries [such as a material risk of harm] can nevertheless be concrete [and establish standing]," *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 WL 2842447, at *7, 8 (U.S. May 16, 2016), and, as such, stands in direct opposition to many of the Article III standing arguments advanced by Johnson & Bell.

[2]    Although Defendant suggests that the decision to arbitrate was mutual, (Mot. at 4 ("Plaintiffs and Johnson & Bell opted for [private arbitration]. . . .")), that is not the case. While Plaintiffs have now opted for arbitration—for the reasons described herein—*Defendant's counsel specifically declined to pursue or compel arbitration* of Plaintiffs' claims. (Thomassen Decl. ¶ 2.)

a choice that should be respected. . . .").) Rather, it's a choice of efficiency based on Defendant's stated—and incredibly *inefficient*—approach to this case.

From the outset, Plaintiffs had two goals in this litigation: (1) secure immediate injunctive relief to protect Plaintiffs and other putative class members from the security vulnerabilities affecting Johnson & Bell's systems (as set out in the Complaint ¶¶ 18-34) and (2) get to the merits of Plaintiffs' claims as quickly as possible. To meet their first goal, Plaintiffs filed their case in this Court and contemporaneously moved for a Rule 65 temporary restraining order.[3] By the time the parties first appeared in Court, however, Johnson & Bell had—in cooperation with Plaintiffs' counsel—already corrected two of the three security vulnerabilities identified in the Complaint and was actively working on the third. Based on those efforts and representations, and wanting to proceed as efficiently as possible, Plaintiffs withdrew their motion for a temporary restraining order.

Despite these promising first steps, counsel for Johnson & Bell soon made clear that continued litigation in this Court would frustrate Plaintiffs' goal of quickly reaching the merits of their claims. Namely, at the parties' Rule 26(f) conference, counsel for Johnson & Bell explained that Defendant's planned defense in this case focused on contesting Plaintiffs' Article III standing (i.e., by treating this as a "data breach" case, where plaintiffs always face an uphill— and protracted—battle establishing their standing to sue).[4] And even though this case does not

---

[3]     While Plaintiffs repeatedly attempted to discuss the issue of venue with Johnson & Bell before filing this matter (i.e., this Court versus JAMS), Johnson & Bell refused to address the issue.

[4]     Johnson & Bell also set this position out in its May 9, 2016 "Rule 11" correspondence, where it explained its two-pronged standing defense—arguing that, first, Plaintiffs have not suffered a "concrete and particularized injury" because "J&B's servers were never breached," and, second, Plaintiffs "are not threatened with certainly impending future harm" because, again, "there has been no server breach." (*See* May 9, 2016 Correspondence, attached here as Exhibit 2.) During the parties' Rule 26(f) conference and in separate correspondence, (attached here as

adhere to the typical data breach class action format—and, thus, Johnson & Bell's overall litigation strategy makes little sense—Plaintiffs' counsel acknowledge that because the law on Article III is unsettled in the Seventh Circuit, Johnson & Bell's chosen (albeit meritless) approach to this case would have likely taken years to resolve. And given their goal of a speedy resolution (and further acknowledgment that there is no corresponding uncertainty regarding Article III in arbitration proceedings), Plaintiffs opted to dismiss and re-file in arbitration at JAMS.

## B. The Parties' Overall Dispute.

By way of additional background—and because Johnson & Bell is doing everything it can to frame the parties' dispute before this case becomes a matter of public record—it must be noted that *this* litigation is only a piece of the overall dispute between Plaintiffs and Johnson & Bell. As described in the Complaint filed with this Court, Plaintiffs are former clients of Johnson & Bell. And while this case addresses the lax information security protocols Plaintiffs faced by

---

Exhibit 3), counsel for Plaintiffs explained that while this strategy is typical for just about every federal data breach case, it has little bearing on Plaintiffs' *actual* claims here (which, rather than looking to a data breach or subsequent identity theft as a source of harm, rely on the data security protections that Plaintiffs paid for, but did not receive). *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at *18 (N.D. Cal. Feb. 14, 2016) (in case against health insurer, observing that "more recent case law within the data breach context confirms that benefit of the bargain damages represent economic injury" and accepting such damages for claim brought under California's Unfair Competition Law, which requires that a plaintiff demonstrate injury in fact and a loss of money or property); *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-3088, 2014 WL 1323713, at *6 (N.D. Cal. March 28, 2014) (data security case endorsing benefit of the bargain damages for claim brought under California's Unfair Competition Law, on allegations that social networking website promised, but did not provide, "industry standard" data security); *Resnick v. AvMed*, 693 F.3d 1317, 1328 (11th Cir. 2012) (case against health insurer endorsing benefit of the bargain damages on unjust enrichment claim, on allegations that insurer failed to use money for data security in accordance with privacy notices); *In re Adobe Sys., Inc. Privacy Litig.*, No. 13-cv-05226, 2014 WL 4379916, at *15 (N.D. Cal. Sept. 4, 2014) (endorsing benefit of the bargain damages on claim under California Unfair Competition Law where defendant failed to provide data security promised).

virtue of Johnson & Bell's poor representation, the dispute between the parties goes much, much

deeper, and is the subject of three separate proceedings:

1)  **A traditional malpractice action**, which concerns Johnson & Bell's botched representation of Plaintiffs in the matter of *Hussein v. Coinabul, LLC*, No. 14-cv-5735 (N.D. Ill.), including by:

- Misleading Plaintiffs about Johnson & Bell's experience with Plaintiffs' area of business (the Bitcoin industry). Despite Johnson & Bell's pre-representation promises of having subject area expertise, Plaintiffs had to repeatedly educate the attorneys at Johnson & Bell about *every* aspect of their business and industry.

- Misleading Plaintiffs about Johnson & Bell's purportedly vast experience handling consumer class action litigation.

- Putting the case largely in the hands of an incapable (or at least grossly inexperienced) attorney (Ann E. Zipfel), who is no longer employed by Johnson & Bell.

- Failing to succeed on, but wasting an inordinate amount of time on, a frivolous Rule 12 motion. This included, *inter alia*, (i) failing to prevail on any aspects of the merits and asserting legal arguments that were clearly and obviously foreclosed by well-settled law in this—and almost every other—jurisdiction, (ii) deciding, without any real explanation or thought, to avoid asserting obvious and potentially meritorious defenses specific to Plaintiffs' interactions with Mr. Hussein, a former Coinabul customer (despite Plaintiffs' repeated and specific pleas that they be included), and (iii) seeking relief that was specifically foreclosed by controlling Supreme Court case law, *see Hussein v. Coinabul, LLC*, No. 14 C 5735, 2014 WL 7261240, at *2 (N.D. Ill. Dec. 19, 2014) (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S.Ct. 568, 580 (2013) ("As a threshold matter, Defendants' motion to dismiss . . . is procedurally defective," but acknowledging that "Plaintiff recognized Defendants' error and used the proper standard in its response brief.")).

- Deciding to terminate their representation of Plaintiffs without any legitimate basis, which resulted in a default judgment of over $1.5 million against Plaintiffs.

- Representing to the court, in its motion to withdraw its representation, that Johnson & Bell had "difficulty

> communicating" with Plaintiffs and that Plaintiffs failed to meet other "significant obligations" to the firm. These representations were demonstrably false.
>
> • Violating its ethical duties to Plaintiffs by abandoning them at the first sign of potential financial difficulty, and at a crucial point in the case, knowing that its withdrawal would leave Plaintiffs without representation and likely to suffer catastrophic legal consequences.

2) **A related malpractice action regarding Johnson & Bell's practice of bilking *all* of its clients for millions of dollars in the form of overcharged costs and overhead billing.** This second action specifically addresses Johnson & Bell's practice of regularly—but surreptitiously—billing its clients for on-going "costs" and, in violation of Illinois law, ethical rules, and its own client retainer agreements, marking up those costs by extraordinary amounts and pocketing the difference as unearned profit.

3) **This data security case**, which concerns Johnson & Bell's failure to protect and safeguard the privileged and confidential client information and communications entrusted to it—an act that Johnson & Bell's own partners have otherwise described as plain malpractice. Specifically, in 2014, Joseph R. Marconi, a shareholder at Johnson & Bell, with assistance from an associate, wrote an article showcasing Johnson & Bell's purported expertise in the area of client privacy and data security. There, Mr. Marconi opines that Illinois Rule of Professional Conduct 1.6(a) (never mind common sense) "*necessitates* proactive implementation of safeguards that will help in the prevention and defense of this information's electronic theft."[5]

Presently, the traditional malpractice case and the matter concerning Johnson & Bell's practice

of profiting from the grossly inflated "costs" secretly billed to its clients are proceeding in

JAMS—and will be joined shortly by the claims that were asserted in this matter. Further,

because both the costs and data security matters will proceed in arbitration on a class basis (i.e.,

---

[5]      Joseph R. Marconi and Brian C. Langs, *Don't Let Cybersecurity Breaches Lead to Legal Malpractice: The Fax Is Back*, ISBA Mutual Practice Updates, https://www.isbamutual.com/liability-minute/donrsquot-let-cybersecurity-breaches-lead-to-legal (last visited Jun. 10, 2016).

on behalf of Johnson & Bell's current and former clients[6]) they will require that the putative

class receive notice of the actions at various points—meaning that, by their nature, the two class

arbitrations *will not* be confidential proceedings.

While the above actions frame the universe of disputes between the parties, they

(unfortunately) fail to fully capture Johnson & Bell's continued attempts to bully and threaten

Plaintiffs' counsel throughout this litigation. For example, both Johnson & Bell's Rule 12

Motion—which, again, was filed *after* Plaintiffs voluntarily dismissed their claims—and Johnson

& Bell's instant Response reference "a Rule 11 warning for false allegations." (Resp. at 1.) But

despite this bluster, no Rule 11 letter has ever actually been served about any topic.[7] And while

Johnson & Bell did send correspondence about certain allegations in the Complaint that it

apparently believes are not true (concerning its use of a JBoss Application Server), it did not (i)

provide Plaintiffs with any factual basis for its belief (even though Plaintiffs' counsel

immediately and specifically asked for one) or (ii) explain why the proper course wouldn't be to

simply deny that allegation when answering the Complaint (as opposed to threatening sanctions).

Likewise, Johnson & Bell's filings reference certain comments that Plaintiffs' counsel

has made through Twitter and in the legal press. (Resp. at 1, 3.) In addition to directly accusing

them of wrongdoing in the instant filings, Johnson & Bell has separately (through additional

correspondence) tried to create the impression that it planned on bringing defamation claims

---

6    Due to potential other future litigation, however, the putative classes in these matters *will not* include Johnson & Bell's former health care (hospitals, doctor offices, etc.) clients.

7    Specifically, on May 9, 2016, counsel for Johnson & Bell sent Plaintiffs' counsel a letter "pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure," but did not include a copy of any proposed motion, as is specifically required by Rule 11(c)(2). *See* Exhibit 2. Although Plaintiffs' counsel pointed out Johnson & Bell's failure to comply with the requirements of Rule 11, explained that its assertions regarding the allegations of the Complaint were incorrect, and requested additional information to understand its stated positions in that regard, Johnson & Bell has never served Plaintiffs with a proposed Rule 11 motion or otherwise responded. *See* Exhibit 3.

against Edelson PC. (*See* May 9, 2016 Letter, attached as Exhibit 4.) But when Plaintiffs'
counsel quickly responded and asked Johnson & Bell to identify the public statements that were
"defamatory," Johnson & Bell pivoted and claimed that its May 9th correspondence was only
sent for "educational purposes." Of course—and regardless of whether it ever really intended to
pursue its threatened defamation action—Johnson & Bell's accusations of wrongdoing are
empty: no attorney at Edelson PC has violated any duty to keep this presently-sealed matter
confidential or otherwise made false statements to the public or press. Plaintiffs' counsel have,
long before this case was filed, discussed Edelson PC's plans to bring cases focusing on law
firms' lax data security practices; the fact that some of their public comments gesture towards
this case—*without mentioning the identity of either party*—in no way threatens or otherwise
undermines the temporarily-sealed nature of these proceedings. (Besides, Johnson & Bell also
forgets that it was *Plaintiff* (and not Johnson & Bell) who filed this matter under seal in the first
place, which was done as a step to protect everyone's interests while the underlying security
vulnerabilities were addressed.)

These persistent (but baseless) threats notwithstanding, Plaintiffs and Edelson PC look
forward to resolving the entirety of the parties' (and associated putative class members') disputes
in arbitration at JAMS.

**II.     ARGUMENT**

As noted above and in the Motion, the *only* basis underlying Plaintiffs' initial request that
this matter be kept temporarily confidential and under seal—protecting the putative class from
harm—has been eliminated. Without any basis to overcome the strong presumption toward the
public disclosure of court files and documents—a right that the Seventh Circuit has characterized
as "fundamental to a democratic state" and "of constitutional magnitude," *Matter of Continental*

8

*Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984)—Plaintiffs' Motion explains that there's no reason to maintain this case under seal. *See In re Bank One*, 222 F.R.D. at 584 (where the need to keep information under seal has disappeared, a court should "unseal the documents in [the] case and . . . permit the public to enjoy the right of free access to which it is entitled.").

Johnson & Bell has not responded to *any* of these facts or legal principles. Instead, it makes two misguided (and misleading) arguments. Neither is availing.

**First**, Johnson & Bell recommends that the Court use the Rule 26(c) *discovery* protective order standard when ruling on Plaintiffs' Motion to Unseal Case. (Resp. at 3 (citing *Seattle Times Co. v. Rhineheart*, 467 U.S. 20, 36 (1984); Fed. R. Civ. P. 26).) But Johnson & Bell's reliance on Rule 26(c)—which only allows "[a] party or any person from whom discovery is sought" to move for a protective order—is completely inapposite to the relief sought here. While Rule 26 may protect parties "from whom discovery is sought" from "annoyance, embarrassment, oppression, or undue burden or expense," (Resp. at 3), it has nothing—at all—to do with whether this *entire case* (where discovery has neither been propounded nor produced) should be kept under seal. Accordingly, Johnson & Bell's conspicuously unsupported suggestion that Rule 26(c) can also be used to "seal all or part of a matter" is seriously misleading, at best. (*See id.*)

**Second**, Johnson & Bell suggests that where parties have agreed to arbitrate, "[c]ourts in the Seventh Circuit have recognized that . . . cases may properly be kept under seal at least until such time that a decision is made as to whether the case will proceed in arbitration or in the court." (Resp. at 4.) Thus, Johnson & Bell suggests that, here, the parties have "opted for privacy and that is a choice that should be respected." (*Id.*) This argument fails on a number of levels.

To start, it's simply not true that *either* party here has "opted for privacy." Plaintiffs filed their case in the district court to—at bare minimum—secure temporary injunctive relief for the class. Defendant never contested the decision to proceed in this Court. In fact, during the parties' Rule 26(f) conference, Johnson & Bell's counsel *specifically stated that it would not seek to compel arbitration* (even though the parties' retainer agreement contains an arbitration provision). (Thomassen Decl. ¶ 2.) And now that the goal of temporary injunctive relief has been resolved (i.e., through Johnson & Bell's agreement to fix its own security vulnerabilities, rather than litigate Plaintiffs' now-withdrawn motion for a temporary restraining order), Plaintiffs have dismissed and intend to re-file their case in JAMS; but they are doing so for the purposes of efficiency, not confidentiality. *See supra*, § I.A. As such, and in line with the *Union Oil* case quoted by Defendant, Plaintiffs' "call[ed] on the courts," Johnson & Bell accepted that decision, and now both parties "must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." (*See* Resp. at 4 (quoting *Union Oil of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).)

Next, it's equally untrue that courts in the Seventh Circuit keep cases "under seal until such time that a decision is made as to whether the case will proceed in arbitration or in the court," as Johnson & Bell suggests. (Resp. at 4.) Notably, Johnson & Bell cites to *no* case where a party successfully argued (or even tried to argue) that an entire *case file*—including the names of the litigants—should be maintained under seal. To the contrary, each of the authorities that Johnson & Bell selected critically undermines its position. For example, two of the three cases cited by Johnson & Bell concern whether previously sealed information should be kept confidential on appeal—and, in both instances, the Seventh Circuit ruled strongly in favor of the public's right of access. *See Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir.

10

2000) (holding that "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification" and "direct[ing] the clerk of this court to place all appellate papers in the public record. On remand, the district court must do the same, dissolving any confidentiality orders entered in the case."); *see also Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Circ. 2002) (denying motion to place documents under seal and holding that there are very few categories of documents in civil litigation that are kept confidential once their bearing on the merits of a suit has been revealed and "the sort of agreement that governs discovery (or arbitration) is even weaker as a reason for appellate secrecy."). And the decision of the third case, *Walker v. Gore*, provides little guidance here, given that the court's decision was premised entirely on the fact that the parties had agreed to written *confidentiality* and arbitration agreements (whereas here, no confidentiality agreement is in play). *See Walker v. Gore*, No. 1:08-CV-0549, 2008 WL 4649091, at *1 (S.D. Ind. Oct. 20, 2008). Without that agreed-upon confidentiality provision, it's a near-certainty that the *Walker* court would not have granted the defendant's request to keep certain (but not all) documents in the case under seal. *See id.* (noting "how strong[ly] the current flows [against the defendant's request to seal]" and citing to *Baxter*, 297 F.3d 544 and *Union Oil*, 220 F.3d 562).

Finally, Johnson & Bell laments that should the case be unsealed, the "court record will consist only of Plaintiffs' self-serving positions stated in their complaint." (Resp. at 5.) But that's not true either. As noted above, Defendant made sure to get its Rule 12 Motion on file—even though Plaintiffs had already dismissed their claims in this matter—which, of course, is an equally "self-serving" document that, here, cures any "harm" imagined by Johnson & Bell associated with the unsealing of the case file. (Plaintiffs will not take the corresponding step of

responding to Defendant's meaningless Rule 12 Motion.) The same is true of its instant Response, which—as also noted above—doesn't address any aspect of Plaintiffs' Motion, but takes every opportunity to take potshots at Plaintiffs and Edelson PC.

## III.    CONCLUSION

The fact that Defendant believes "there is little or no legitimate purpose to be served by unsealing [the record]," (Resp. at 5), readily demonstrates its unwillingness (or inability) to understand the public's fundamental and constitutional right to access *all* court proceedings. There is no continued basis for maintaining the seal of these proceedings, and Johnson & Bell doesn't even attempt to provide a new one. The seal must be lifted.

Respectfully Submitted,

**JASON SHORE AND COINABUL, LLC**, individually and on behalf of all others similarly situated,

Dated: June 8, 2016                    By: _____
                                              One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin Richman
brichman@edelson.com
Benjamin Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

Todd Logan (admitted *pro hac vice*)
EDELSON PC
329 Bryant Street
San Francisco, California 94107

Tel: 415.234.5260
Fax: 415.373.9495
Firm ID: 44146

## CERTIFICATE OF SERVICE

I, Jay Edelson, an attorney, hereby certify that on June 8, 2016, I will serve the above and

foregoing document by causing true and accurate copies of such paper to be transmitted to the

persons shown below by electronic mail.

Michael C. Bruck
*mcb@willmont.com*
Willis Tower
233 S. Wacker, Suite 6100
Chicago, Illinois 60606-6359
WILLIAMS, MONTGOMERY, & JOHN LTD

**1**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JASON SHORE and COINABUL, LLC, individually and on behalf of all others similarly situated, | Case No.: 16-cv-04363 |
| | DOCUMENT FILED UNDER SEAL |
| Plaintiffs, | Hon. John W. Darrah |
| v. | Magistrate Judge Susan E. Cox |
| JOHNSON & BELL, LTD, an Illinois corporation, | |
| Defendant. | |

## DECLARATION OF BENJAMIN S. THOMASSEN

I, Benjamin S. Thomassen, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am an adult over the age of 18 and a resident of the State of Illinois. I am an associate at the law firm of Edelson PC, which has been retained to represent Plaintiffs Jason Shore and Coinabul, LLC ("Plaintiff") in this matter and I am admitted to practice before this Court. I have personal knowledge of all matters set forth herein and if called upon to testify, I could and would competently do so.

2.  On May 17, 2016, the parties held their Rule 26(f) conference by telephone. I represented Plaintiffs on the call and Michael Bruck represented Defendant Johnson & Bell. Over the course of the call, I asked Mr. Bruck whether Johnson & Bell planned on compelling arbitration in this matter. Mr. Bruck responded that Johnson & Bell would not seek to compel (and, in fact, Mr. Bruck indicated that he preferred litigation in the district court).

3.  On May 26, 2016, and per the prior agreement of the parties regarding electronic service, I served counsel for Johnson & Bell (Michael Bruck) with a copy of the Rule 41 notice of voluntary dismissal filed in this matter. Johnson & Bell filed its Rule 12 Motion to Dismiss

the following day (i.e., on May 27, 2016).

&ast;    &ast;    &ast;    &ast;

I declare under penalty of perjury that the above and foregoing is true and accurate.

Executed June 8, 2016 at Chicago, Illinois.

Benjamin S. Thomassen

# Exhibit 2

# WILLIAMS MONTGOMERY & JOHN LTD

## A FIRM OF TRIAL LAWYERS

**Michael C. Bruck**
Direct: 312-443-3235
Fax: 312-6308535
mcb@willmont.com

May 9, 2016

**Via Email and Hand Delivery**

Jay Edelson
jedelson@edelson.com
Edelson PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654

        Re:   *Jason Shore and Coinabul, LLC v. Johnson & Bell*
             USDC ILND: 2016-CV-04363

Dear Jay:

    I am writing pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure to request that you dismiss the above-referenced action against my client Johnson & Bell, Ltd. ("J&B").

    Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

May 9, 2016
Page 2

> opportunity for further investigation or discovery. . .

Fed. R. Civ. P. 11(b).

Failure to comply with the requirements of Rule 11 can lead to the imposition of sanctions against the offending attorney, including the payment of opposing party's attorneys' fees. Fed. R. Civ. P. 11(c). One of the basic purposes of Rule 11 is "to deter baseless filings in the district court." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). Indeed, "the very point of Rule 11 is to lend incentive for litigants to stop, think and investigate more carefully before serving papers and filing papers." *Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture*, 217 F.3d 502, 504 (7th Cir. 2000) (internal citations omitted). Sanctions under Rule 11 may be imposed on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Id.*; *see also U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 469-470 (7th Cir. 2005) (finding a violation of Rule 11 where law firm moved forward with eviction after learning of incorrect address in its pleadings).

When considering a Rule 11 motion for sanctions, the court "employs a standard of objective reasonableness, and must consider whether a reasonable attorney would have or should have known that his conduct violated the provisions of the Rule." *Optionsxpress, Inc. v. Hale*, 2009 WL 4015556, Case No. 08 C 179, at *1 (N.D. Ill. Nov. 19, 2009). "Subjective good faith is no longer a valid defense to charges of having transgressed Rule 11's proscriptions." *Diversified Technologies Corp.*, 118 F.R.D. 445, 450 (N.D. Ill. 1988). Indeed, "[p]ure heart, empty head" is not a defense. *Id.* "The Court must look to the circumstances surrounding the allegedly sanctionable conduct, and may impose sanctions even if only some of the party's actions violated the Rule." *Optionsxpress, Inc. v. Hale*, 2009 WL 4015556, Case No. 08 C 179, at *1 (N.D. Ill. Nov. 19, 2009).

In the present case, Plaintiffs' Complaint fails to satisfy the objective reasonableness standards of Rule 11. First, Plaintiffs' claim against J&B is not objectively reasonable because there is no evidentiary basis to allege J&B's Webtime server to access billing records "is built on a 'JBoss Application Server' ...." (Complaint at ¶ 20.) Second, Plaintiffs' claim against J&B is not objectively reasonable because no unauthorized access has been alleged and, thus, standing is lacking and/or the claims are moot.

## Lack of Evidentiary Support to Claim Use of Out of Date JBoss Application Server

Plaintiffs' complaint is founded on a central allegation that J&B's Webtime server for access to its billing software "is built on a 'JBoss Application Server'...." (Complaint at ¶ 20.) We have asked on several occasions for the basis of this claim and none has been supplied.

Plaintiffs claim, among other things, that the Webtime server allows staff and attorneys to track their time on a system that is accessible from the internet. (Complaint at ¶ 18.) They further allege that hackers can gain access to the system "with impunity because Defendant has improperly configured the service and left it running out-of-date software." (Complaint at ¶ 19.)

May 9, 2016
Page 3

The complaint claims "Defendant's Webtime time tracking system is built on a "JBoss Application Server"...that is allegedly "woefully out-of-date and suffers from critical vulnerability." (Complaint at ¶¶ 20, 21.) The complaint goes on to claim that J&B's "time record system can be accessed without any username or password and that certain specified information can, therefore, be accessed and certain allegedly "devastating" results could potentially occur. (Complaint at ¶¶ 36-41.)

As mentioned, we have asked you on several occasions the basis for the claim that J&B is running a JBoss Application Server, and that basis has not been provided by Plaintiffs. A specific reason for the request is because, prior to the filing of this suit, as a matter of fact, J&B was not running on a JBoss Application Server for its Webtime time and billing system and, thus, the central factual allegation of the suit is baseless.

Accordingly, because the central factual allegation of Plaintiffs' complaint lacks any evidentiary support, pursuant to Rule 11, we demand the suit be withdrawn.

### Failure to State a Viable Claim against Johnson & Bell

Moreover, Plaintiffs' complaint fails to state a viable claim against J&B. Not only is the central factual claim of using a JBoss Application Server baseless, Plaintiffs' complaint fails to allege a breach or "hack" of the server.

First, Plaintiffs cannot establish standing to bring this action as Plaintiffs have not suffered an injury. Standing under Article III of the United States Constitution requires plaintiffs to demonstrate that they have "suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-3700, 2016 WL 1459226, at *2 (7th Cir. Apr. 14, 2016) (quoting *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661, 186 L. Ed. 2d 768 (2013)). Plaintiffs are unable to demonstrate a "concrete and particularized injury" because there isn't one. J&B's servers were never breached and, thus, Plaintiffs have suffered no injury.

Second, Plaintiffs cannot establish standing under Article III because they are not threatened with certainly impending future harm. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013). As demonstrated above, the central basis for the claim of inadequate cybersecurity is baseless and there has been no server breach. Plaintiffs' allegations of a possible future breach are thus, at best, speculative and remote and Plaintiffs cannot show a risk of certainly impending future harm.

Third, Plaintiffs' claim for injunctive relief is moot because the allegedly "inadequate" JBoss Application Server was not in use at the time of this suit and, thus, there is no likely danger of Plaintiffs' information being hacked. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary

May 9, 2016
Page 4

relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."); *Wernsing v. Thompson*, 423 F.3d 732, 744 (7th Cir. 2005) ("The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (citation omitted)).

Fourth, because Johnson & Bell's servers are up-to-date, Plaintiffs' additional claims seeking an order requiring Defendant to inform its clients that its computer systems are not secure and allow a third-party firm to perform a security audit are also moot.

Fifth, given the mootness of Plaintiffs' injunctive relief claim, Plaintiffs' claim for declaratory judgment alone does not present a live case or controversy under Article III, rendering the claim moot. *See e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (finding prisoner's declaratory and injunctive actions moot when after being transferred without explanation from a medium to a maximum security facility, prisoner was returned to a medium security prison before the district court could rule and no adverse action had been taken against the prisoner as a result of the transfer); *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) ("The Declaratory Judgment Act did not (and could not) alter the constitutional definition of "case or controversy" or relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question."). Thus, Plaintiffs' declaratory judgment claim is moot.

Accordingly, in accordance with Rule 11, we request that Plaintiffs' complaint be withdrawn in its entirety. All rights are reserved and none are waived.

Very truly yours,

Michael C. Bruck

MCB
#1239305

**2**

3

# Exhibit 3

**Edelson PC**

350 North LaSalle Street, 13th Floor, Chicago, Illinois 60654
t 312.589.6370 | f 312.589.6378 | www.edelson.com

May 18, 2016

**Via Electronic Mail**

Michael C. Bruck
*mcb@willmont.com*
Williams Montgomery & John Ltd.
33 S Wacker Drive, #6100
Chicago, Illinois 60606

Re: ***Shore, et al. v. Johnson & Bell LTD*, 2016-CV-04363 (N.D. Ill.)**

Mike:

I write in response to your May 9th "Rule 11" letter.[1] In the letter you advance two primary positions: first, that Plaintiff's allegations regarding Johnson & Bell's use of a JBoss Application Server lack any evidentiary basis; and second, you contend that Plaintiffs lack Article III standing to pursue their claims altogether. Each is taken in turn below.

As to the first issue, you vaguely claim that "prior to the filing of this suit, as a matter of fact, J&B was not running on a JBoss Application Server for its Webtime time and billing system." It's not at all clear to us what point you're trying to make. But in an effort to better understand, we'd ask that you let us know whether:

1. Prior to the filing of the complaint, J&B operated the domain www.jbltd.com.

2. Prior to the filing of the complaint, J&B operated the subdomain webtime.jbltd.com.

3. Prior to the filing of the complaint, J&B hosted a JBoss Application Server at all.

4. Prior to the filing of the complaint, the JBoss Application Server identified in No. 3 above (if any) was version 4.0.2.

5. Prior to the filing of the complaint, J&B used any software from Rippe &

---

[1]     You seem to misunderstand how Rule 11 works. Rather than simply sending a letter, as you did, you were required to (but did not) serve us with a copy of the motion you intend to file. *See* Fed. R. Civ. P. 11(c)(2).

Chicago | San Francisco

Kingston, LLC.

6.  Prior to the filing of the complaint, the Rippe & Kingston, LLC software used by J&B (if any) was accessible at https://webtime.jbltd.com/LMS/action/start.

7.  Prior to the filing of the complaint, J&B used Rippe & Kingston, LLC software for time record management (i.e., billing records, time keeping, etc.).

8.  Prior to the filing of the complaint, sensitive and confidential information was accessible through the JBoss Application Server or applications running on it. (At the very least, accessible to attorneys or staff employed by J&B.)

9.  Prior to the filing of the complaint, the JMXInvokerServlet had no required authentication.

10. After the filing of the complaint, J&B fixed the "JBoss Vulnerability" as that term is defined in the complaint.

11. The "JBoss Vulnerability" could have led to the unauthorized access of sensitive and confidential information had J&B not fixed it.

If you're willing to provide J&B's positions on each of the above, we'll in turn be able to provide a substantive response to the position you stake out in your letter.

As to the second issue—your contention that Plaintiffs lack Article III standing—your letter misunderstands our theory of the case and the relevant law. As you discussed yesterday with my colleague, Ben Thomassen (in the context of the Parties' Rule 26(f) conference), our damages theory in this case is that Plaintiffs and putative class members "overpaid" for J&B's services. Specifically, Plaintiffs allege that had they known of J&B's substandard data security practices, they either would have paid less for its services or, in reality, would not have agreed to pay anything at all. And as Mr. Thomassen further explained to you, the cases cited in your May 9th letter—*all* of which address "traditional" data breach damages, such as those resulting from identity theft or out-of-pocket costs spent to protect against identity theft—don't address this theory at all. (To be clear, however, the Supreme Court's recent *Spokeo* decision confirms that we would have standing to bring claims in line with this traditional model, based on the "material risk of harm" posed by J&B's data security practices. *Spokeo, Inc. v. Robins*, N. 13-1339, 2016 WL 2842447, at \*7, 8 (U.S. May 16, 2016) ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries [such as the material risk of harm] can nevertheless be concrete [and establish standing].").)

Rather, courts addressing data security cases like this one—i.e., where the primary mode of recovery looks to benefit of the bargain damages—have accepted Plaintiffs' damages model on allegations relating to promised, but un-provided, data security services. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at \*18 (N.D. Cal. Feb. 14, 2016) (in case against health insurer, observing that "more recent case law within

the data breach context confirms that benefit of the bargain damages represent economic injury" and accepting such damages for claim brought under California's Unfair Competition Law, which requires that a plaintiff demonstrate injury in fact and a loss of money or property); *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-3088, 2014 WL 1323713, at *6 (N.D. Cal. March 28, 2014) (data security case endorsing benefit of the bargain damages for claim brought under California's Unfair Competition Law, on allegations that social networking website promised, but did not provide, "industry standard" data security); *Resnick v. AvMed*, 693 F.3d 1317, 1328 (11th Cir. 2012) (case against health insurer endorsing benefit of the bargain damages on unjust enrichment claim, on allegations that insurer failed to use money for data security in accordance with privacy notices); *Weinberg v. Advanced Data Processing, Inc.*, No. 15-CIV-61598, 2015 WL 8098555, at *6 (S.D. Fla. Nov. 17, 2015) (case against medical payment processor endorsing benefit of the bargain damages on unjust enrichment claim, on allegations that payment processor's "share of [plaintiff's payment for medical services] was supposed to be, but was not, used . . . to pay for the administrative costs of data management and security") (internal quotations omitted); *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1105 (N.D. Cal. 2010) (public disclosure of sensitive information case endorsing benefit of the bargain damages and recognizing that—based on representations in defendant's privacy statements—the "collection and disclosure of members' undeniably sensitive information is not something that members bargained for when they signed up and paid fees for AOL's service"); *In re Adobe Sys., Inc. Privacy Litig.*, No. 13-cv-05226, 2014 WL 4379916, at *15 (N.D. Cal. Sept. 4, 2014) (endorsing benefit of the bargain damages on claim under California Unfair Competition Law where defendant failed to provide data security promised).

Critically, these benefit of the bargain damages do not depend upon identity theft, future harm, or ancillary costs (like credit monitoring)—i.e., injuries that have traditionally been pleaded in data breach cases (and are the plain focus of your letter). Rather, they look to a plaintiff's "lost expectation interest . . . [i.e.,] the benefit of the bargain that full performance would have brought." *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2015 WL 1503429, at *4 (N.D. Cal. Apr. 1, 2015) (quoting *New West Charter Middle School v. Los Angeles Unified School Dist.*, 187 Cal.App. 4th 831, 844 (2010)) (finding plaintiff had Article III standing under benefit of the bargain theory of damages, on allegations that money retained by defendant payment processor was to be used for "a payment processing service that would . . . [also keep her] private information confidential . . . [but defendant] did not [provide] the contracted-for privacy protections.").

None of the cases cited in your letter so much as mention overpayment or benefit of the bargain damages, let alone explain why that theory cannot support Article III standing. That's not entirely surprising, given that you apparently learned about this theory, case law, and the thrust of our case for the first time on your call with Mr. Thomassen. And while you've separately claimed that you were aware of cases like *AvMed*, *LinkedIn*, and *Neiman-Marcus*, it's notable that they weren't mentioned in your letter nor have you explained why you believe that they "support [y]our position." We're of course open to better understanding your views in this respect and would welcome an explanation.

*     *     *

**Edelson PC**

Mr. Michael C. Bruck
May 18, 2016
Page 4 of 4

We look forward to hearing from you on these issues.

Sincerely,

EDELSON PC

Benjamin H. Richman

4

# Exhibit 4



WILLIAMS MONTGOMERY & JOHN LTD

A FIRM OF TRIAL LAWYERS

**Michael C. Bruck**
Direct: 312-443-3235
Fax: 312-6308535
mcb@willmont.com

May 9, 2016

**Via Email and Hand Delivery**

Jay Edelson
jedelson@edelson.com
Edelson PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654

      Re:   *Jason Shore and Coinabul, LLC v. Johnson & Bell*
             USDC ILND: 2016-CV-04363

Dear Jay:

     I am writing because of certain communications you have had recently concerning this lawsuit as reported in the attached Law360 article. The article reflects statements by you on Twitter and directly to Law360. You may not be aware that the litigation privilege for defamatory statements does not extend to statements to the press. I specifically direct you to *Missner v. Clifford*, 393 Ill. App. 3d 751 (1st Dist. 2009) and the principles stated therein. Separately, I am sending you a letter under the safe harbor provisions of Rule 11 demonstrating the lack of factual basis and legal merit to your client's claims. Dissemination of defamatory statements concerning my client has the clear potential to cause harm. We trust you will proceed with appropriate care. All rights are reserved and none are waived.

               Very truly yours,

               Michael C. Bruck

MCB
Enclosures
#1239329