

**FILED**

PK

9/22/2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| JASON SHORE and COINABUL, LLC, individually and on behalf of all others similarly situated, | Case No.: 16-cv-04363 |
|  | **DOCUMENT FILED UNDER SEAL** |
| *Plaintiffs*, |  |
|  | Hon. John W. Darrah |
| *v.* |  |
|  | Magistrate Judge Susan E. Cox |
| JOHNSON & BELL, LTD, an Illinois corporation, |  |
| *Defendant*. |  |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DIRECT PLAINTIFFS TO PROCEED TO ARBITRATION ON AN INDIVIDUAL BASIS AND ENJOIN CLASS ARBITRATIONS

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

III.    STANDARD OF REVIEW .................................................................................4

IV.     ARGUMENT........................................................................................................5

        A.      The Arbitrator—Not the Court—Should Decide Whether the Parties'
                Arbitration Agreement Covers Class Claims.......................................5

                1.   The availability of class arbitration is a procedural question that should
                     be decided by the arbitrator...........................................................5

                2.   Even if the availability of class arbitration is construed as a substantive
                     gateway matter, here, the parties agreed that the arbitrator would
                     determine all questions of arbitrability.......................................11

        B.      The Language of Defendant's Arbitration Agreement Demonstrates that
                the Parties Intended the Clause to Include Class Arbitration........................14

V.      CONCLUSION ..................................................................................................18

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011).........................................................................................7, 15

*Green Tree Financial Services v. Bazzle,*
    539 U.S. 444 (2003)...........................................................................................5, 7

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002)...................................................................................... *passim*

*Mastrobuono v. Shearson Lehman Hutton,*
    514 U.S. 52 (1995)...............................................................................................16

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983).................................................................................................4

*Oxford Health Plans LLC v. Sutter,*
    133 S. Ct. 2064 (2013)......................................................................................6, 7

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.,*
    559 U.S. 662 (2010)................................................................................7, 11, 14

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*BCBS of Mass., Inc. v. BCS Ins. Co.,*
    671 F.3d 635 (7th Cir. 2011) ...............................................................................8

*Champ v. Siegel Trading Co.,*
    55 F.3d 269 (7th Cir. 1995) ...............................................................................10

*Dockser v. Schwartzberg,*
    433 F.3d 421 (4th Cir. 2006) ...............................................................................5

*Employers Ins. Co. of Wausau v. Century Indem. Co.,*
    443 F.3d 573 (7th Cir. 2006) ...........................................................................6, 8

*Jock v. Sterling Jewelers Inc.,*
    646 F.3d 113 (2d Cir. 2011)..........................................................................16, 17

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,*
    174 F.3d 90 (7th Cir. 1999) ......................................................................... 15-16

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ........................................................................................15

*Sutter v. Oxford Health Plans LLC*,
    675 F.3d 215 (3d Cir. 2012)...............................................................................14, 15, 16

**UNITED STATES DISTRICT COURT CASES:**

*Chatman v. Pizza Hut, Inc.*,
    No. 12-cv-10209, 2013 WL 2285804 (N.D. Ill. May 23, 2013)..............................9, 10, 12

*Collier v. Real Time Staffing Servs., Inc.*,
    No. 11-cv-6209, 2012 WL 1204715 (N.D. Ill. Apr. 11, 2012)............................................9

*Cramer v. Bank of Am., N.A.*,
    No. 12-cv-8681, 2013 WL 238413 (N.D. Ill. May 30, 2013)..............................................9

*Harrison v. Legal Helpers Debt Resolution, LLC*,
    No. 12-cv-2145, 2014 WL 4185814 (D. Minn. Aug. 22, 2014)........................................15

*Henderson v. U.S. Patent Comm'n Ltd.*,
    No. 15-cv-3897, 2016 WL 3027895 (N.D. Ill. May 27, 2016)...........................1, 7, 10, 12

*Kovachev v. Pizza Hut, Inc.*,
    No. 12-cv-9461, 2013 WL 4401373 (N.D. Ill. Aug. 15, 2013) ................................. *passim*

*Price v. NCR Corp.*,
    908 F. Supp. 2d 935 (N.D. Ill. 2012) ........................................................... *passim*

*State Farm Fire & Cas. Co. v. Pentair, Inc.*,
    No. 11-cv-06077, 2012 WL 3904104 (N.D. Ill. Sept. 7, 2012)....................................9, 17

*Williams-Bell v. Perry Johnson Registars, Inc.*,
    No. 14-cv-1002, 2015 WL 6741819 (N.D. Ill. Jan. 8, 2015).................................... *passim*

**STATE SUPREME COURT CASES:**

*Duldalao v. St. Mary of Nazareth Hosp. Ctr.*,
    505 N.E. 2d 314 (Ill. 1987) ...............................................................................................16

**STATE APPELLATE COURT CASES:**

*Epstein v. Yoder*,
    391 N.E. 2d 432 (Ill. Ct. App. 1979) ................................................................................16

**MISCELLANEOUS:**

JAMS Class Action Procedures,
      https://www.jamsadr.com/rules-class-action-procedures/ .....................................11, 13, 15

JAMS Comprehensive Arbitration Rules & Procedures,
      https://www.jamsadr.com/rules-comprehensive-arbitration/.......................................12, 13

S. I. Strong, *Does Class Arbitration "Change the Nature" of Arbitration?*
      *Stolt-Nielsen, AT&T, and a Return to First Principles*,
      17 Harv. Negot. L. Rev. 201 (2012) ...............................................................................18

## I.    INTRODUCTION

This putative class action—which was dismissed in favor of private arbitration on May 26, 2016—concerns Defendant Johnson & Bell, Ltd.'s ("Johnson & Bell" or "Defendant") abject failure to safeguard the confidential information entrusted to it by its clients, including information belonging to Plaintiffs Jason Shore and Coinabul, LLC ("Plaintiffs"). Johnson & Bell represented Plaintiffs in connection with a separate consumer class action brought against Plaintiffs' business in late 2014. As a part of that representation, Johnson & Bell required that Plaintiffs—like every one of its other clients—agree to resolve disputes concerning that representation at JAMS Endispute of Chicago, Illinois ("JAMS").

Obviously regretting its selection of JAMS—and its accompanying rules, which *specifically* allow for class arbitration—in its form arbitration agreements, Defendant now asks that the Court intervene in two separate arbitrations (both brought pursuant to the express terms of its form client retention letters) and prevent Plaintiffs from arbitrating their claims on a class basis. In support, and relying almost entirely on Judge Feinerman's recent opinion in *Henderson v. U.S. Patent Comm'n, Ltd.*, No. 15-cv-3897, 2016 WL 3027895 (N.D. Ill. May 27, 2016), Defendant asks the Court to (i) decide a procedural matter about whether the parties' arbitration agreement contemplates class arbitration, and (ii) interpret the parties' arbitration agreement as prohibiting class arbitration.

Defendant's Motion, however, fails on both fronts. First, and with all due respect to Judge Feinerman, the majority of courts in the Northern District of Illinois agree that the availability of class arbitration is a procedural matter and, thus, should be decided by arbitrators, not courts. Further, even if class arbitration were a substantive issue of arbitrability, the parties here agreed that the issue should nevertheless be decided by an arbitrator at JAMS. Second, and

1

regardless of who decides the issue, an objective reading of Johnson & Bell's form arbitration provision indicates that the parties intended *any* dispute to be arbitrable, including class disputes.

As such, and for the reasons discussed below, Defendant's Motion should be denied.

## II.     FACTUAL BACKGROUND

### *The Hussein Matter*

Plaintiffs retained Johnson & Bell in connection with the matter of *Hussein v. Coinabul LLC, et al.*, No. 1:14-cv-05735 (N.D. Ill.). (*See* Compl.[1] Ex. 2.) In that case, Mr. Hussein—a customer of Coinabul—alleged that Shore and Coinabul misappropriated his and others' bitcoin (a form of digital currency) in connection with the Coinabul exchange—a service that allowed users to convert their bitcoin to gold. Because the *Hussein* matter challenged their core business practices, Plaintiffs knew and understood that their legal representation would involve, at minimum, the transmission and discussion of highly confidential business information with their attorneys (e.g., client data, proprietary business practices, etc.). (Compl. ¶¶ 52-55.) As such, Plaintiffs made clear from the outset that data security was of paramount concern to them; in fact, Plaintiff Shore specifically spoke with Johnson & Bell about his expectations of privacy and security before retaining the firm. (*Id.* ¶ 55.) Johnson & Bell, in turn, assured Plaintiffs that it had sufficient security in place to protect any confidential data transmitted or maintained in connection with the *Hussein* matter. (*Id.*)

Convinced that Johnson & Bell would in fact protect their confidential information (and were otherwise competent to handle their case), Plaintiffs signed Johnson & Bell's form client retention letter. (Compl. Ex. 2.) The agreement included a broadly-worded arbitration clause:

Arbitration of Disputes. Although we do not expect that any dispute between us

---

[1]     Plaintiffs' Complaint, along with its Exhibits, is attached to Defendant's Motion as Exhibit A.

will arise, in the unlikely event of any dispute under this agreement, including a dispute regarding the amount of fees or the quality of our services, such dispute shall be determined through binding arbitration with the mediation/arbitration services of JAMS Endispute of Chicago, Illinois. Any such arbitration shall be held in Chicago, Illinois unless the parties agree in writing to some other location. Each party to share the costs of the arbitration proceeding equally. Each party will be responsible for their own attorney's fees incurred as a result of the arbitration proceeding.

(*Id.* at 3.) Apart from selecting JAMS for the resolution of "any dipsute[s]," the retention letter did not limit the scope of arbitrable claims in any way. (*Id.*)

Attorneys from Johnson & Bell represented Plaintiffs in the *Hussein* matter through a motion to dismiss and moved to withdraw shortly thereafter. Without representation in the *Hussein* matter, Plaintiffs had a default judgment entered against them.

### The Data Security Issues

In the months following Defendant's retreat from the *Hussein* matter, it came to light that Johnson & Bell's data security infrastructure exposed a great deal of client information—such as confidential client data and attorney-client communications, including that belonging to Plaintiffs—to the public. The Complaint filed in this case details at least three ways that Johnson & Bell left its clients' data exposed, most critically by using out-of-date software that suffered from critical (and well-known) security vulnerabilities. (Compl. ¶¶ 18-34.) As a result—and especially in light of the recent hacker attacks on law firms—Plaintiffs alleged that it was only a matter of time before this exposure was detected by the hacking community, exploited, and, in turn, used to cause inordinate and irreparable harm to Johnson & Bell's current and former clients. (*Id.* ¶¶ 35-41.)

### This Matter and the Companion "Costs" Arbitration

Plaintiffs initially filed their Complaint—and accompanying motion for a temporary restraining order—in the District Court for one reason: correcting Johnson & Bell's insecure

3

storage of their (and others') confidential information. Fortunately, this was done quickly.

Shortly after their initial appearance before Judge Shadur, the parties cooperatively addressed

(and corrected) the three specific security vulnerabilities identified in Plaintiffs' Complaint. (*See*

Def. Mot. Ex. C at Ex. 1 ¶ 3.) With that aspect of the case out of the way, Plaintiffs voluntarily

dismissed this action and refiled—consistent with the terms of Johnson & Bell's arbitration

provision—in JAMS.[2] (*See* Def. Mot. Exs. B, C.)

As Defendant notes, this matter is one of "three actions" brought by Plaintiffs against

Johnson & Bell. One of these—another matter brought as a class arbitration pursuant to the terms

of Johnson & Bell's arbitration provision—concerns Defendant's practice of routinely inflating

and overcharging its clients for costs (e.g., photocopying, calls, etc.) by 100-500%.[3] The other

concerns Johnson & Bell's specific representation of Plaintiffs in the *Hussein* matter (and, thus,

is not brought as a class proceeding).

Defendant then filed the instant Motion on August 12, 2016, seeking to enjoin Plaintiffs

from proceeding in JAMS on a class basis in either this matter or the separate "costs" arbitration.

## III.    STANDARD OF REVIEW

"[A]rbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed to submit." *Howsam v. Dean Witter Reynolds,*

*Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted). As a general rule, any ambiguity as to

"the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*

*Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). That said, "whether the

---

[2]      *See* Plaintiffs' Motion to Unseal Case, filed on May 5, 2016, and Notice of Voluntary Dismissal and of Intent to Pursue Requested Unsealing of Case File, filed on May 26, 2016.
[3]      While Defendant attached the arbitration demand to its Motion as Exhibit D, the "costs" arbitration was brought in JAMS and is presently confidential according to Rule 26(a) of the JAMS Comprehensive Arbitration Rules & Procedures.

parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83. Courts historically decide questions of arbitrability, while procedural questions are reserved for the arbitrator. *Williams-Bell v. Perry Johnson Registars, Inc.*, No. 14-cv-1002, 2015 WL 6741819, at \*5 (N.D. Ill. Jan. 8, 2015). And when a procedural matter is at issue, the defendant bears the burden of demonstrating why the court, rather than the arbitrator, should decide the issue. *Howsam*, 537 U.S. at 84; *see also Dockser v. Schwartzberg*, 433 F.3d 421, 427 (4th Cir. 2006) ("[T]he onus is on the party seeking litigation on a procedural issue to show that the agreement somehow excludes that issue from arbitration.").

## IV.    ARGUMENT

### A.    The Arbitrator—Not the Court—Should Decide Whether the Parties' Arbitration Agreement Covers Class Claims.

Relying on *Henderson*, Defendant asks the Court to decide whether its form arbitration agreement allows for class arbitration. In support, Defendant says that because class arbitration is different from other types of arbitrable cases, the availability of class arbitration is a "gateway" question of arbitrability, rather than a procedural one. (Mot. at 8-13). Defendant is wrong for at least two reasons: (i) as recognized by the Supreme Court in *Green Tree Financial Services v. Bazzle*, 539 U.S. 444 (2003) and the vast majority of courts in this District, the availability of class arbitration is a procedural question and, thus, must be decided by an arbitrator; and (ii) even if the issue is a substantive one (and, thus, a matter of arbitrability), the parties here specifically agreed that any questions of arbitrability would be decided by an arbitrator at JAMS.

### 1.    The availability of class arbitration is a procedural question that should be decided by the arbitrator.

Defendant's argument that the availability of class arbitration is a gateway question for

the Court hinges on *Henderson* (which falls within a minority of the courts in this District to confront the issue) and decisions from the Third, Fourth, and Sixth Circuits (none of which are binding on this Court). But those decisions—and, thus, Defendant's argument—are inconsistent with the majority view in this District, as well as relevant Seventh Circuit and Supreme Court precedent.

Substantive questions of arbitrability are limited in scope and include "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter[.]" *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006) (quoting *Howsam*, 537 U.S. at 83-84). For example, substantive questions of arbitrability may include "1) a dispute regarding 'whether the parties are bound by a given arbitration clause'; and 2) 'a disagreement about whether an arbitration clause in a concededly binding contract applies to this particular type of controversy.'" *Wausau*, 443 F.3d at 576-77 (quoting *Howsam*, 537 U.S. at 84). Procedural questions, on the other hand, refer to "'disputes concerning prerequisites and conditions precedent to arbitration; allegations of waiver, delay, or other similar defenses to arbitrability; the preclusive effect of state court judgments; and the construction of the contract language itself.'" *Williams-Bell*, 2015 WL 6741819, at *5 (quoting *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 941 (N.D. Ill. 2012)). In other words, an issue is procedural when it concerns "what *kind of arbitration proceeding* the parties agreed to." *Kovachev v. Pizza Hut, Inc.*, No. 12-cv-9461, 2013 WL 4401373, at *2 (N.D. Ill. Aug. 15, 2013) (quoting *Wausau*, 443 F.3d at 578) (emphasis in original).

Although the Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability," *see Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013), it nevertheless addressed—and answered—the question directly in *Bazzle*.

There, in a plurality opinion, the Court recognized that even where parties agree to arbitrate, there remain "limited instances . . . that 'contracting parties would likely have expected a court' to decide[, including] certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Bazzle*, 539 U.S. at 452 (citing *Howsam*, 537 U.S. at 83). With respect to the issue of class arbitration, the Court found that

> [the issue] does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. [T]he question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*. Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to. That question does not concern a state statute or judicial procedures. It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations . . . this matter of contract interpretation should be for the arbitrator, not the courts, to decide.

*Id.* (internal citations omitted). This position has been acknowledged and followed by many courts within this District. *See, e.g., Price*, 908 F. Supp. 2d at 940 (citing *Bazzle*, 539 U.S. at 452–53). Further, it's significant that even though the Supreme Court has been confronted with several opportunities to render a decision contradicting *Bazzle*, it has never done so. *See, e.g., Oxford Health*, 133 S. Ct. at 2068 n.2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (addressing only whether FAA preempted state law prohibiting class action waivers in arbitration agreements); *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 685 (2010) (refusing to revisit *Bazzle*). Thus, *Bazzle* remains the most instructive Supreme Court authority on this issue.

Like the Supreme Court, the Seventh Circuit[4] has never directly held whether the issue of

---

[4]     There is a Circuit split among the Courts of Appeals that have addressed this issue. "The Third, Fourth, and Sixth Circuits have held that class arbitrability is a question of arbitrability[.]" *Henderson*, 2016 WL 3027895, at *4. The Fifth Circuit, by contrast, has held that broad

class arbitration is a procedural or substantive "gateway" question. It has, however, addressed the related issue of whether the availability of *consolidated* arbitration should be decided by a court or by an arbitrator. *See Wausau*, 443 F.3d at 581; *BCBS of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638-39 (7th Cir. 2011). In *Wausau*, and later upheld by *BCS Ins. Co.*, the Seventh Circuit held that consolidated arbitration is not a gateway matter for the court, but is a procedural issue for an arbitrator to decide. *See Wausau*, 443 F.3d at 581; *BCS Ins. Co.*, 671 F.3d at 638-39. Both *Wausau* and *BCS Ins. Co.* reasoned that where parties agree their dispute is arbitrable but disagree about the *scope* of the arbitration proceeding, the disagreement is procedural and, thus, falls within the purview of the arbitrator. *See Wausau*, 443 F.3d at 577 ("We find based on *Howsam* that the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one . . . . concern[ing] grievance procedures—i.e., whether [defendant] can be required to participate in one arbitration covering both Agreements, or in an arbitration with other reinsurers."); *BCS Ins. Co.*, 671 F.3d at 639 ("Apparently [defendant] believes that any party to arbitration is entitled to litigate in advance whether arbitrators *would* exceed their powers if they reached a particular procedural decision during the course of an arbitration. Nothing in the [FAA] authorizes that sort of anticipatory review, which in many situations would entail an advisory opinion . . . . The only question that a court should address before arbitration starts is whether the parties have agreed to arbitrate at all.").

Similarly, the "majority position" in this District is that—consistent with *Bazzle*— "questions about classwide arbitration are procedural and thus are properly left to an arbitrator." *Williams-Bell*, 2015 WL 6741819, at *5. *See also Kovachev*, 2013 WL 4401373, at *2 (N.D. Ill.

---

language in an arbitration clause "would dictate that the availability of class arbitration is a procedural question presumptively for the arbitrator[.]" *Id.* The broad language of the arbitration clause here, *see* Section IV.B., *infra*, brings this action squarely in line with the reasoning of the Fifth Circuit.

Aug. 15, 2013); *Cramer v. Bank of Am., N.A.*, No. 12-cv-8681, 2013 WL 2384313, at *3-4 (N.D. Ill. May 30, 2013); *Chatman v. Pizza Hut, Inc.*, No. 12-cv-10209, 2013 WL 2285804, at *6-8 (N.D. Ill. May 23, 2013); *Price*, 908 F. Supp. 2d at 941-45; *Collier v. Real Time Staffing Servs., Inc.*, No. 11-cv-6209, 2012 WL 1204715, at *5 (N.D. Ill. Apr. 11, 2012). The common thread throughout these cases makes clear that when there is no disagreement between the parties as to whether a dispute is subject to arbitration in the first place, then the issue of "[w]hether [a plaintiff] may arbitrate his claims on a class basis clearly relates to the 'procedure' of the arbitration, and therefore the question should decided by the arbitrator." *Kovachev*, 2013 WL 4401373, at *2. *See also Price*, 908 F. Supp. 2d at 944–45 ("The Court finds *Pentair's* treatment of *Wausau* and *Howsam* persuasive and in accordance with Seventh Circuit precedent regarding consolidated arbitration . . . . Because the question of whether the Agreement at issue here implicitly permits class arbitration is not a question of whether the Agreement is valid or whether it covers the parties' underlying dispute, it is a question of procedural arbitrability for the arbitrator to decide.").

Here, neither party disputes whether Plaintiff's claims are subject to Johnson & Bell's form arbitration agreement. Thus, there is no "gateway" question of arbitrability for a court to decide, such as whether Plaintiff is "bound by a given arbitration clause" or whether the arbitration clause "applies to this particular type of controversy." *See Howsam*, 537 U.S. at 84. Further, and given that Johnson & Bell presumably uses the same form arbitration agreement with all of its clients (who, here, would comprise the class), "[t]here is no 'risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate,' because . . . the type of dispute is indisputably covered by the [Johnson & Bell form arbitration agreement]." *State Farm Fire & Cas. Co. v. Pentair, Inc.*, No. 11-cv-06077, 2012 WL 3904104, at *4 (N.D. Ill. Sept. 7,

9

2012) (quoting *Howsam*, 537 U.S. at 83-84). As such, and consistent with *Bazzle* and the majority position in this District, there is no basis for this Court to decide the procedural question of whether Plaintiffs can proceed on a classwide basis in JAMS.

Nothing in Defendant's Motion undermines this conclusion. For example, Johnson & Bell erroneously discounts the majority of decisions in this District as "inapposite," because class and consolidated arbitrations are not the same. (Mot. at 10-13.) But while there's obviously differences between class and consolidated matters, many courts have found the two to be closely analogous, given that each "'involves two or more cases that share common questions of law or fact being decided in a single proceeding.'" *Williams-Bell*, 2015 WL 6741819, at *6 (quoting *Chatman*, 2013 WL 2285804, at *8. Not surprisingly, then, these same cases have found Seventh Circuit precedent regarding consolidated arbitration "instructive"—including *Wausau* and *BCS Ins. Co.*—as to the issue of class arbitration. *Price*, 908 F. Supp. 2d at 942 n.3 (recognizing the lack of any controlling authority on point, but finding that "the Seventh Circuit's analysis and application of caselaw concerning consolidated arbitration to address questions concerning class arbitration remains "instructive.") (citing *Champ v. Siegel Trading Co.*, 55 F.3d 269, 274-75 (7th Cir. 1995)).[5]

In any event, whether class proceedings "change[] the nature of arbitration" is irrelevant to whether a court or an arbitrator should decide on the availability of class-wide arbitration and the Supreme Court's holding in *Stolt-Nielsen* does not command an outcome contrary to the one

---

[5]     *Henderson* (and thus by proxy, Defendant) makes a distinction between analogizing "consolidated arbitration to class arbitration for all purposes" versus analogizing "a contract's *failure to provide* for one with a failure to provide for the other." *Henderson*, 2016 WL 3027895, at *4 (citing *Champ*, 55 F.3d at 275). According to *Henderson*, "[t]hat limited congruence merely reflects the principle that arbitration is a matter of contract." *Id.* (internal quotation omitted). This argument is inapposite. Here, unlike the facts presented in *Henderson*, the parties agreed as a matter of contract *both* to let an arbitrator decide any gateway matters to their dispute as well as to the availability of class arbitration. *See* Sections IV.A.2 and IV.B, *infra*.

Plaintiff urges here. *Williams-Bell*, 2015 WL 6741819, at *7 ("This court finds that *Stolt-Nielsen* does not answer the question presently before it."). That's because "*Stolt-Nielsen* says nothing about *who* should decide whether an arbitration proceeds on a class basis." *Kovachev*, 2013 WL 4401373, at *2 (emphasis added). Instead, the opinion is narrowly focused on the issue of whether "mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Stolt-Nielsen*, 559 U.S. at 687.[6] "Therefore, *Stolt-Nielsen* does not change the Court's analysis" regarding whether an arbitrator or a court decides the availability of class arbitration. *Kovachev*, 2013 WL 4401373, at *2.

The availability of class arbitration is thus a procedural matter that should be submitted to the arbitrator for review.

**2. Even if the availability of class arbitration is construed as a substantive gateway matter, here, the parties agreed that the arbitrator would determine all questions of arbitrability.**

In addition to its "gateway" argument, Johnson & Bell—once again relying almost exclusively on *Henderson*—argues that because "the arbitration clause in [its form] client engagement letter does not explicitly or implicitly adopt the rules of an arbitration administrator . . . [the] letter does not 'show an intention to incorporate' any particular arbitration rules." (Mot. at 13.) It's an argument Defendant must make, given that the JAMS rules *specifically* leave the question of the availability of class arbitration to the arbitrator. *See* JAMS Class Action Procedures, Rule 2, https://www.jamsadr.com/rules-class-action-procedures/#two (last visited Sept. 22, 2016). But what Defendant fails to account for (and what makes *Henderson* readily distinguishable from this case) is that by identifying the tribunal for the resolution of disputes, the parties here also necessarily agreed upon the applicable rules—which, as noted, reserve the

---

[6]     Plaintiff addresses this separate issue in Section IV.B.

11

question of class arbitration for the arbitrator.

"[P]arties to an arbitration contract would normally expect a forum-based decisionmaker [sic] to decide forum-specific procedural gateway matters." *Howsam*, 537 U.S. at 86. Express references to a specific arbitrator imply governance under that arbitrator's rules. *See, e.g.*, *Williams-Bell*, 2015 WL 6741819, at *5 (arbitration agreement specifying arbitration before the AAA governed by AAA rules); *Kovachev*, 2013 WL 4401373, at *1 (same); *Chatman*, 2013 WL 2285804, at *1 (same); *Price*, 908 F. Supp. 2d at 945 (same). In contrast, and as Judge Feinerman observed with respect to the agreement at issue in *Henderson*, where an arbitration agreement "does not require the parties to arbitrate their disputes using a specific arbitral forum," there is no argument that the parties nevertheless agreed to a specific arbitrator's rules. 2016 WL 3027895, at *7-8.

Here, the form arbitration provision drafted by Defendant unequivocally refers all disputes to exclusive arbitration at JAMS. And like other arbitration proceedings of similar scope to this one, the parties also agreed that any dispute would be governed by JAMS' Comprehensive Arbitration Rules & Procedures ("JAMS Rules"):

> **Rule 1. Scope of Rules**
>
> (a) The JAMS Comprehensive Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, **in the absence of such agreement, any disputed claim or counterclaim that exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.**
>
> (b) **The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for** Arbitration by JAMS under its Comprehensive Rules or for **Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.**

JAMS Comprehensive Arbitration Rules & Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 1 (last visited Sep. 21, 2016) (emphasis added). Here, because

Plaintiffs pleaded that the amount in controversy of this action "exceeds $5,000,000, exclusive of interest and costs," (Compl. ¶ 8.), and the arbitration agreement does not prescribe rules other than those of JAMS, Johnson & Bell thus agreed to be governed by JAMS' Rules. *See* JAMS Rule 1(a)-(b).

Finally, because the JAMS Rules apply to disputes brought under Johnson & Bell's arbitration provision, they also require that all questions of arbitrability—including the availability of class arbitration—be decided by the arbitrator. Specifically, JAMS Rule 11(b) states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules & Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 11 (last visited Sept. 22, 2016). And more to the point, Rule 2 of JAMS' Class Action Procedures—which also apply here[7]—provides that:

> [T]he Arbitrator, following the law applicable to the validity of the arbitration clause as a whole, or the validity of any of its terms, or any court order applicable to the matter, shall determine as a threshold matter whether the arbitration can proceed on behalf or against a class.

JAMS Class Action Procedures, https://www.jamsadr.com/rules-class-action-procedures/#two (last visited Sept. 22, 2016).

As such, even if the issue of class arbitrability were a "gateway" question (i.e., and was not a question for the arbitrator outside of any specific rule selection), the parties already agreed

---

[7]     *See* JAMS Class Action Procedures, https://www.jamsadr.com/rules-class-action-procedures/#one (last visited Sept. 22, 2016); JAMS Comprehensive Arbitration Rules & Procedures, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 1 (last visited Sept. 22, 2016).

that—in cases like those alleged by Plaintiffs here—the issue of whether the parties agreed to arbitrate class claims should be decided by an appointed arbitrator at JAMS.

**B.    The Language of Defendant's Arbitration Agreement Demonstrates that the Parties Intended the Clause to Include Class Arbitration.**

Finally, and no matter who ultimately decides the issue, there is no basis to enjoin class arbitration in this case. To this end, Defendant argues that its form arbitration provision's lack of an express or implicit reference to class arbitration precludes its availability. (Mot. at 16-17 (suggesting the Johnson & Bell arbitration provision "is 'silent' on its face as to class arbitration").) This argument, however, conveniently ignores the language of the provision, which expressly states that *any* dispute arising under the agreement shall be governed by the arbitration services of JAMS.

Contrary to Defendant's argument, "*Stolt-Nielsen* did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 221 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013); *see also Kovachev*, 2013 WL 4401373, at *2 ("*Stolt-Nielsen* did not create a bright-line rule that class arbitration is impermissible when an agreement is silent on the issue"); *Price*, 908 F. Supp. 2d at 943 (recognizing that there is a clear distinction "between contractual 'silence' and the lack of express authorization of class arbitration"). Instead, it merely held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielson*, 559 U.S. at 672. When "the parties genuinely disagree as to whether the [arbitration agreement] covers class arbitration"—as is the case here—then "the parties' failure to mention class arbitration in the [arbitration agreement] is not 'silence' in the *Stolt-Nielsen* sense." *Price*, 908 F. Supp. 2d at 943 (alluding to the fact that

14

the parties in *Stolt-Nielsen* had stipulated that the agreement's silence as to class arbitration meant that they had not reached an agreement). Thus, under *Stolt-Nielsen*, an arbitration agreement may allow for class arbitration without "incanting" as much. 559 U.S. at 684-85. *See also Sutter*, 675 F.3d at 221.

The Supreme Court has held that a decision-maker interpreting whether an agreement encompasses class arbitration should look to "the arbitration agreement itself or some background principle of contract law that would affect its interpretation." *Concepcion*, 563 U.S. at 347 (citing *Stolt-Nielsen*, 559 U.S. at 681-86). Here, the parties broadly and unequivocally agreed to arbitrate "any dispute" under their contract:

> Arbitration of Disputes. Although we do not expect that any dispute between us will arise, in the unlikely event of any dispute under this agreement, including a dispute regarding the amount of fees or the quality of our services, such dispute shall be determined through binding arbitration with the mediation/arbitration services of JAMS Endispute of Chicago, Illinois. Any such arbitration shall be held in Chicago, Illinois unless the parties agree in writing to some other location. Each party to share the costs of the arbitration proceeding equally. Each party will be responsible for their own attorney's fees incurred as a result of the arbitration proceeding.

(Dkt. 1, Ex. 2.)[8] Basic principles of contract law require the enforcement of contracts according to their own terms. *See, e.g.*, *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (courts must give contract terms their plain meaning); *Concepcion*, 563 U.S. at 339 (arbitration agreements must be enforced "according to their terms"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174

---

[8] As further proof that the parties intended the availability of class arbitration, the referral of all disputes to JAMS necessarily incorporates the JAMS Class Action procedures. *See* Section IV.A.2, *supra*. Rule 1 of those procedures explicitly states that JAMS will not prohibit class arbitration ***unless the parties agreed to a class waiver***. JAMS Class Action Procedures, https://www.jamsadr.com/rules-class-action-procedures/#one (last visited Sept. 21, 2016). *See also Harrison v. Legal Helpers Debt Resolution, LLC*, No. 12-cv-2145, 2014 WL 4185814, at *7 (D. Minn. Aug. 22, 2014) (upholding arbitrator's ruling permitting class arbitration, and finding it relevant that "[JAMS Class Action Procedures] Rule 1 allows for class arbitration in the absence of a 'class preclusion clause.'").

F.3d 90, 909-10 (7th Cir. 1999) (broad arbitration agreements create a presumption of arbitrability and should be interpreted broadly). And because the parties broadly intended to arbitrate any possible claims, they necessarily agreed to arbitrate *class* claims. *Cf. Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 61 (1995) (recognizing that the plain language of a broad arbitration provision agreeing to "settle all disputes" between the parties permitted all forms of relief available had the action been brought in court). The broad language of the arbitration agreement therefore encompasses class disputes and that language should be given its full contractual effect.[9]

To this point, the Third Circuit's ruling in *Sutter* is particularly instructive. There, the court affirmed that a broad arbitration clause—similar to the one at issue here—permitted class actions in arbitration even though there was no express reference to class actions in the agreement. *Sutter*, 675 F.3d at 223. The arbitration clause at issue in *Sutter* stated:

> No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and **all such disputes** shall be submitted to final and binding arbitration in New Jersey, pursuant to the Rules of the American Arbitration Association with one arbitrator.

*Id.* at 217 (emphasis added). The court in *Sutter* found this language broad enough to affirm the arbitrator's ruling that it "embraces all conceivable court actions, including class actions." *Id.* at 233. The language of the arbitration agreement in this case is similarly broad and, thus, similarly encompasses *all* types of cases including class actions.

The Second Circuit has also found that a similarly broad arbitration provision includes disputes brought on behalf of a class. In *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir.

---

[9] Even absent an express or implied inclusion of class arbitration, the arbitration agreement is at minimum ambiguous with respect to whether the parties intended to permit class actions. Under ordinary contract rules, that ambiguity must be decided in favor of Plaintiffs and against Defendant as the drafter. *See Duldalao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 319 (Ill. 1987); *Epstein v. Yoder*, 391 N.E.2d 432, 438 (Ill. Ct. App. 1979).

2011), the relevant clause required parties to arbitrate "**any dispute, claim, or controversy** . . . regarding any alleged unlawful act . . . which could have otherwise been brought . . . in a[n] appropriate court." *Id.* at 116-17 (emphasis added). The Second Circuit upheld the arbitrator's conclusion that disallowing class arbitration would contradict the express language of the agreement, and found it persuasive that the "contract was drafted by [the employer] and was not the product of negotiation, [therefore] it was incumbent on [the employer] to ensure that all material terms, especially those adverse to the employee, were clearly expressed." *Id.* at 117, 126. The broad language in *Jock* encompassing "any dispute"—including, therefore, class actions—is indistinguishable from the language in the arbitration agreement here.

Still, Defendant claims that the phrasing "between us" and "under this agreement" precludes class arbitration. (Mot. at 17.) But the relationship between the parties further clarifies that they consented to class arbitration here. As a large law firm representing thousands of clients (both individuals and entities), Defendant stood in the middle of presumably thousands of separate arbitration agreements with those clients, which were similar, if not identical, to the agreement it had with Plaintiffs. (*See* Compl. ¶ 58.) In other words, Defendant's agreement to arbitrate was not unique to Plaintiffs. Plaintiffs and every other client who signed Defendant's arbitration agreement all have the right to arbitrate their claims against Johnson & Bell. As such, allowing class-wide arbitration would not force Defendant to arbitrate with anyone with whom it did not already have an existing agreement to arbitrate "any dispute." *See Pentair*, 2012 WL 3904104, at *4 (quoting *Howsam*, 537 U.S. at 83-84) (where dispute is covered by form arbitration agreement, there is "no 'risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate'" in potential class proceedings). Therefore, just as the Third Circuit held in *Sutter* and the Second Circuit held in *Jock*, their claims may proceed on a class wide

basis. *See also* S.I. Strong, *Does Class Arbitration "Change the Nature" of Arbitration? Stolt-Nielsen, AT&T, and a Return to First Principles*, 17 Harv. Negot. L. Rev. 201, 225-26 (2012) (in these types of business-to-consumer relationships, disputes "almost always involve a series of identical (or functionally identical) arbitration provisions, often embodied in a series of standard contracts that are offered on a take-it-or-leave-it basis and that cannot be individually negotiated" and thus both parties are generally "aware of the collective nature of many of these kinds of claims."). Thus, given the context of their relationship, it cannot be said that the parties—and certainly Defendant, considering the nature of its business—were not aware that class claims could possibly arise under their agreement.

Therefore, the arbitration agreement clearly demonstrates that the parties intended "any disputes" to be arbitrated, including those brought as class actions.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs Jason Shore and Coinabul, LLC respectfully request that the Court enter an Order (i) denying Defendant Johnson & Bell's motion, and (ii) providing such other and further relief that the Court deems reasonable and just.

Respectfully submitted,

**JASON SHORE** and **COINABUL, LLC**,
individually and on behalf of all others similarly
situated,

Dated: September 22, 2016

By: _____
One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin Richman
brichman@edelson.com
Benjamin Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

## **CERTIFICATE OF SERVICE**

I, Benjamin S. Thomassen, an attorney, hereby certify that on September 22, 2016, I

served the above and foregoing document by causing true and accurate copies of such paper to

be transmitted to the persons shown below by electronic mail.

Michael C. Bruck
*mcb@willmont.com*
Willis Tower
233 S. Wacker, Suite 6100
Chicago, Illinois 60606-6359
WILLIAMS, MONTGOMERY, & JOHN LTD