```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

   SUPPRESSED,                      )   No.  16 C 4363
                                    )
                    Plaintiffs,     )   Chicago, Illinois
                                    )   April 21, 2016
                                    )   9:15 o'clock a.m.
   -vs-                             )
                                    )
   SUPPRESSED,                      )
                                    )
                    Defendant.      )


              TRANSCRIPT OF PROCEEDINGS - STATUS
             BEFORE THE HONORABLE MILTON I. SHADUR

   APPEARANCES:

   For the Plaintiffs:      EDELSON PC
                            BY:  MR. JAY EDELSON
                            350  North LaSalle Street
                            Suite 1300
                            Chicago, Illinois 60654
                                      and
                            EDELSON PC
                            123 Townsend Street
                            Suite 100
                            San Francisco, California 94107


   For the Defendant:       WILLIAMS MONTGOMERY & JOHN, LTD.
                            BY:  MR. MICHAEL C. BRUCK
                            233 South Wacker Drive
                            Suite 6100
                            Chicago, Illinois 60606




   Court Reporter:          ROSEMARY SCARPELLI
                            219 South Dearborn Street
                            Room 2304A
                            Chicago, Illinois  60604
                            (312) 435-5815
```

|   |   |
|---|---|
| 1 | THE CLERK:  16 C 4363, Suppressed versus |
| 2 | Suppressed. |
| 3 | MR. EDELSON:  Good morning, your Honor, Jay Edelson |
| 4 | on behalf of the plaintiff and the putative class. |
| 5 | MR. BALABANIAN:  Good morning, your Honor, Rafey |
| 6 | Balabanian also on behalf of the plaintiff and the putative |
| 7 | class. |
| 8 | MR. BRUCK:  Good morning, your Honor, Michael |
| 9 | Bruck, B-R-U-C-K, on behalf of the defendant. |
| 10 | THE COURT:  Good morning.  I have a preliminary |
| 11 | question that you may or may not know the answer to, but it |
| 12 | -- as it turns out it is an important one in connection with |
| 13 | the assignment of this case to my calendar.  I see that |
| 14 | Mr. Shore is from California.  And I note there is a pro hac |
| 15 | vice application that is reflected from the San Francisco |
| 16 | office of Edelson by Todd Logan.  Can somebody tell me |
| 17 | something about Todd Logan. |
| 18 | MR. EDELSON:  Oh, Logan is right there, your Honor. |
| 19 | Todd Logan is a first-year at our firm.  He |
| 20 | operates currently out of the Chicago office but also spends |
| 21 | time in San Francisco as well and will be moving to San |
| 22 | Francisco in a month or two, I believe. |
| 23 | THE COURT:  And he is not here, is he? |
| 24 | MR. BALABANIAN:  Yeah, he is. |
| 25 | MR. EDELSON:  Mr. Logan is right there. |

1             THE COURT:  Mr. Logan, do you want to step up.
2             MR. LOGAN:  Good morning, your Honor, Todd Logan.
3             THE COURT:  Are you a Chicagoan originally?
4             MR. LOGAN:  No, I am not, your Honor.  I am
5    originally from Portland, Oregon.
6             THE COURT:  Okay.  I ask because Todd is a somewhat
7    unusual first name, and Todd Logan was in ancient days when I
8    was still in practice a client of mine in an odd sense.  A
9    Todd Logan who was the son of someone who had been a very
10   close friend as well as client and whose estate I ended up as
11   trustee when he had an untimely early death from pancreatic
12   cancer.  So that I had an immediate concern about that.  So I
13   gather you are not him, right?
14            MR. EDELSON:  Of course.
15            MR. LOGAN:  No relation, your Honor.
16            THE COURT:  Okay.
17            MR. LOGAN:  I believe I am the first Todd in my
18   family.
19            THE COURT:  All right.  Thank you very much.
20            MR. LOGAN:  No problem.
21            THE COURT:  Well, that answers that one.
22            There is, however, another problem.  I don't know
23   whether any of you are golfers who may have heard the
24   ancient, in today's terms -- I think it was Bobby Jones who
25   commented about one of the upcoming golfers that "He plays a

1  game with which I am not familiar."

2  Well, I must confess that I am in that unwashed
3  group when it comes to reading all of the terms that are
4  included in the Snead declaration.  Being a stranger in town
5  my good clerk, who is my odd-numbered law clerk, is far more
6  familiar with it.  But I am fearful that it doesn't make a
7  lot of sense for me to retain the case much as I understand
8  the underlying concept but not the technical aspects of it, I
9  am free to admit.

10  In terms of TRO, I find that troubling because so
11  much of the Snead declaration is essentially in hypothetical
12  terms -- he has not made any determinations based on actual
13  input but rather from what he has read in the Complaint.  And
14  it is of course -- some of the aspects of it, the fundamental
15  aspects, are clear.  That is, the idea of the fiduciary
16  obligation, the obligation to maintain on a secure basis
17  client information, all those things are clear.

18  But the idea of granting threshold interlocutory
19  relief is a very difficult one I would think.  I don't think
20  that on its face the thing would support that
21  instantaneously.  I suspect that probably it simply makes
22  sense for me to exercise the prerogative that Section 294(b)
23  gives to any senior judge of recusing myself from the case
24  for which I don't have to have a reason as senior judge, in
25  hopes that you might end up, for example, reassigned to Matt

1   Kennelly or somebody for whom this language is like mother's
2   milk, as it is not for me.  And I suspect that that is
3   probably the most sensible thing to do.
4           I am not uncomfortable with that for one reason,
5   and that is I really do not think that what is said here and
6   what has been supplied here supports the notion of the
7   extraordinary threshold remedy of a TRO and certainly not a
8   TRO without a bond because of the fact that if changes of the
9   type that are sought here are made, that would impose I think
10  some extraordinary difficulties for the defendant law firm.
11          So I know this is -- this is not what you
12  anticipated, but it seems to me that in fairness to both
13  sides that is what I ought to be doing, and I think that I
14  will simply enter such an order that will again return the
15  case to the wheel.  I still call it a wheel -- the
16  computer-generated assignment system -- and see who you end
17  up with as the presiding judge.
18          Now with that good or bad news -- it depends on
19  your perspective -- is there anything that anybody would want
20  to say to dissuade me from what I have indicated?
21          MR. EDELSON:  Your Honor, if I could just speak
22  briefly.
23          THE COURT:  Sure.
24          MR. EDELSON:  It is bad news just on a personal
25  level because it is nice to be in front of your Honor, but we

1  understand the decision and won't quibble with that.
2        Just to give you actually more relief, we are
3  prepared to take the TRO off calendar, to withdraw without
4  prejudice. We have been talking to the defendant. They have
5  already made two of the three changes to their security
6  system. The third one we are confident we are going to be
7  able to work out together, thus obviating the need for the
8  TRO. So --
9        THE COURT: Well, do you want me to sit with this
10 one on my calendar if you are really talking rather than
11 putting the system through the burden of the reshuffling? I
12 don't care.
13       MR. EDELSON: Our preference would be, if it is
14 going to be reshuffled, we should reshuffle it now, just in
15 case, so there is no -- no delay.
16       THE COURT: Okay. So -- yes?
17       MR. BRUCK: Yeah, we are agreement with that, your
18 Honor. We certainly appreciate and understand your exercise
19 of your prerogative and -- but I think putting it back on the
20 wheel is -- probably makes the most sense right now.
21       THE COURT: Okay. So I will treat the motion for
22 the TRO as continued simply because you haven't resolved
23 everything, unless you want to withdraw the motion.
24       MR. EDELSON: We will withdraw the motion, your
25 Honor --

1      THE COURT:  I will treat.
2      MR. EDELSON:  -- without prejudice, please.
3      THE COURT:  Yes.  I will treat the motion for the
4  TRO as withdrawn without prejudice.  Okay?  And we will take
5  care of -- Carol, how long does it take them to put the thing
6  through and let counsel know to whose calendar it gets
7  assigned?
8      THE CLERK:  Hopefully it should be able to get it
9  done today, if the right person is around to get it all
10 accomplished.  I was going to -- so I could do -- start the
11 process now, and maybe if we are lucky --
12     THE COURT:  Well, I don't want to just start the
13 process.  My question is, why is it not possible for the
14 Clerk's Office to put it through because that is a mechanical
15 item?
16     THE CLERK:  I know.
17     THE COURT:  And they will then know who the
18 transferee judge is because everybody is here.
19     THE CLERK:  I know. I can -- I will probably -- I
20 will send the -- I will -- I will prepare the form and then I
21 will contact the individual supervisors, whatever, to get it
22 done right away.
23     THE COURT:  Okay.
24     THE CLERK:  Okay?
25     THE COURT:  I appreciate your patience.  She will

1  find out for you.  And if -- as long as you are all
2  assembled, why don't you stick around for a short period of
3  time at least to find out.  I would have expected, but I
4  should by now recognize the -- how would I characterize the
5  administrative problems of Federal District Court?  There
6  really are no words to describe it.  So we will try.
7           MR. BALABANIAN:  Excuse me.
8           THE COURT:  And if you will stick around for just a
9  short time, we will see whether you can't get the name of the
10 new assignee judge.  Okay?
11          MR. BRUCK:  Great.
12          THE CLERK:  Should the case still remain under
13 seal?
14          THE COURT:  Yes, of course it remains under seal.
15          MR. BRUCK:  And, Judge, we also were looking at our
16 answer date coming up.
17          THE COURT:  Oh, by the way, I should add a couple
18 of things, of course.  The motion for temporary sealing is of
19 course granted.
20          The -- wait just a minute.  I had some -- I am
21 granting the motion for pro hac vice appearances.  I got a
22 collection of those.  And all of those are granted -- or
23 several of them I think.  The motion for the TRO we have
24 already talked about.
25          And I think those are the only interim actions that

1  may -- that are really needed at this early point, right?
2          MR. BRUCK:  The only concern we have is an answer
3  date --
4          THE COURT:  Oh.
5          MR. BRUCK:  -- and we would like 30 days to --
6          THE COURT:  Okay.  I will give you then -- I will
7  give you until May 20 -- no.  I will give you until May 20th
8  for the -- do you want an answer or a responsive pleading?
9          MR. BRUCK:  Well, responsive pleading.
10         THE COURT:  To answer or otherwise plead on or
11 before May 20th, okay?
12         MR. BRUCK:  Thank you, your Honor.
13         THE COURT:  Thank you all.
14         MR. BALABANIAN:  Thank you for your time, your
15 Honor.
16         MR. EDELSON:  Thank you, your Honor.
17     (Which were all the proceedings heard.)
18                      CERTIFICATE
19    I certify that the foregoing is a correct transcript
20 from the record of proceedings in the above-entitled matter.
21
22 s/Rosemary Scarpelli/         Date:  March 29, 2017
23
24
25